UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KASEY F. HOFFMAN, | No. 2: 15-cv-1558 JAM KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| LASSEN ADULT DETENTION FACILITY, et al., | |
| Defendants. | |

Introduction

Plaintiff is proceeding, without counsel, with this action brought pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). This action proceeds on the second amended complaint as to defendants Lassen County Sheriff Growden and Lassen County Jail Commander Jones. Plaintiff alleges that while housed at the Lassen County Jail, he was denied his First Amendment right to a religious diet, i.e. a Jewish kosher diet. Plaintiff also alleges that his failure to receive a kosher diet violated RLUIPA.

Pending before the court is defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6). Defendants move to dismiss on grounds that the court lacks subject matter jurisdiction and for failing to state a claim upon which relief may be granted. For the reasons discussed herein, the undersigned recommends that defendants' motion

be granted in part and denied in part.

Legal Standard for Motion to Dismiss Brought Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's Claims

This action is proceeding on the second amended complaint filed September 10, 2015. (ECF No. 9.)

Plaintiff alleges that when he was booked into the Lassen County Jail, he was asked by the booking officer, as part of the booking process, whether he required a special diet. Plaintiff told the booking officer that he required a Jewish kosher diet. The booking officer told plaintiff that he would have to talk to medical about his request for a kosher diet and marked "no," apparently on the section of the booking form asking whether plaintiff required a special diet.

Plaintiff then put in a request to see the medical department in order to request his kosher diet. The medical department informed plaintiff that "we do not do religious diets." Plaintiff was then told to submit his request for a kosher diet to the kitchen. Plaintiff's request to the kitchen was sent to defendant Jones for approval. While waiting for approval from defendant Jones, the kitchen manager helped plaintiff have a kosher-like meal. Plaintiff alleges that this alternative diet did not provide him with adequate nutrition.

After waiting for two weeks for approval, plaintiff was taken to defendant Jones' office. Defendant Jones then asked plaintiff about plaintiff's religious requirements. Plaintiff told defendant Jones that he had a religious meal card from California State Prison-Corcoran, that was transferable from institution to institution without prior approval. Defendant Jones told plaintiff that he would have to talk to his superiors and do some research. Plaintiff alleges that during this meeting, defendant Jones told plaintiff that he had "no idea" how to approve a kosher meal. Four days later, plaintiff was called back to see defendant Jones and Sergeant Withrow. Defendant Jones told plaintiff that he was going to ask plaintiff five questions. Following this meeting, plaintiff's request for a kosher diet was denied.

Plaintiff alleges that he grieved the denial of his request for a kosher diet to defendant Growden, who assigned the grievance to Undersheriff Minnow. Plaintiff met with Undersheriff Minnow, and told him that he could call the California Department of Corrections and Rehabilitation ("CDCR") and they would confirm that plaintiff had an active religious meal card. Three days later, plaintiff alleges that he was called back to speak with Undersheriff Minnow,

who told plaintiff that he had called CDCR and verified plaintiff's religious diet requirement. Plaintiff's request for a kosher diet was then granted. It took plaintiff approximately 1 1/2 months following his booking to have his request for a kosher diet granted.

Plaintiff alleges that defendant Growden failed to train his subordinates regarding how to process requests for religious meals.

As relief, plaintiff seeks money damages.

Discussion

A.  Mootness

Defendants first argue that plaintiff's claims for equitable relief are moot because he began receiving a kosher diet before he filed the original complaint and was released from jail custody on November 10, 2015.

In the second amended complaint, it appears that plaintiff seeks money damages only. Plaintiff is not seeking equitable relief. Accordingly, defendants' motion to dismiss plaintiff's claims for equitable relief is disregarded.

B.  Standing

Relying on Resnick v. Adams, 348 F.3d 763 (9th Cir. 2003), defendants argue that plaintiff lacks standing to bring his claim. Defendants argue that in Resnick, the Ninth Circuit held that requiring an application process before a prisoner receives a religious diet does not violate the prisoner's civil rights. The undersigned begins the analysis of defendants' standing argument by first discussing Resnick.

Resnick v. Adams

In Resnick, the plaintiff, a federal inmate, required a kosher diet. 348 F.3d at 765. United States Penitentiary at Lompoc ("Lompoc"), where the plaintiff was housed, accommodated the religious dietary needs of inmates through the Common Fare Program ("CFP"). Id. The regulations setting forth the procedures for federal inmates requesting special diets are set forth in 28 C.F.R. § 528.20(a), which states that the inmates must "provide a written statement articulating the religious motivation for participation in the common fare program." Id.

////

4

"More specific guidance about the CFP at Lompoc – and the procedures for applying to the program – are supplied to each inmate by the Religious Services Department upon admission and orientation to the prison, when each inmate is provided with a handout that discusses religious diets." Id. "The handout reiterates the need to submit an application for the CFP to the chaplain and includes an application form that lays out the requirements of the program." Id. "Once an inmate has applied to the CFP at Lompoc, and the chaplain has approved the application, the chaplain is responsible for entering the necessary information into the computerized database known as Sentry." Id. "According to P.S. 4700.04, "[t]he inmate shall ordinarily begin eating from the Common Fare menu within two days after Food Service receives electronic notification." Id.

In Resnick, the plaintiff did not follow the procedures set forth above for requesting his kosher diet. Id. Instead, approximately 16 months after arriving at Lompoc, the plaintiff wrote letters to prison officials and the chaplain requesting kosher food. Id. at 766.

In Resnick, the Ninth Circuit considered whether the requirement that the plaintiff submit an application in order to receive a kosher meal was by itself an unconstitutional infringement on his right to free exercise. Id. at 767. The Ninth Circuit applied the four part test set forth in Turner v. Safley, 482 U.S. 78 (1987), in order to determine whether the at-issue regulations unconstitutionally infringed on plaintiff's constitutional rights. Id.

The first Turner factor requires a "valid connection between the prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 89. In Resnick, the Ninth Circuit found that the legitimate government interest at stake was the orderly administration of a program that allowed federal prisons to accommodate the religious dietary needs of thousands of prisoners. Resnick, 348 F.3d at 769. The Ninth Circuit went on to find that the "application for the CFP supplied to each incoming inmate at Lompoc has a 'valid, rational connection' to this legitimate interest." Id. "It sets forth the ground rules of the CFP, provides an opportunity for the chaplain to assess the sincerity of the applicant's belief, and, most important, provides a standardized form for each inmate seeking accommodation, thereby aiding in the administration of the program – no small matter in a prison such as Lompoc with over

5

1,800 inmates." Id.

The second Turner factor is "whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. The Ninth Circuit found that this factor "also cuts in favor of prison officials since Resnick has not shown, and indeed cannot show, that he would not have been provided with a kosher diet had he filed the proper application." Id. "For, prison officials not only were willing to work with Resnick once he submitted his application to ensure his needs were met, there also was at least one other inmate at Lompoc receiving a completely kosher diet." Id. at 669-70.

The third Turner factor requires the court to consider "the impact accommodation of the asserted constitutional right will have" on other inmates, the guards and prison regulations. Turner, 482 U.S. at 90. The Ninth Circuit found that accommodating Resnick's request that he not be required to file the standard application for a religious diet would frustrate the orderly administration of CFP and of Lompoc generally. Resnick, 348 F.3d at 770.

The fourth Turner factor requires consideration of the availability of "obvious, easy alternatives." Turner, 482 U.S. at 90. The Ninth Circuit found that it was "difficult to think of any alternatives more 'obvious' and 'easy' than simply requiring each inmate seeking a religious diet to fill out the standard CFP application form." Resnick, 348 F.3d at 770.

The Ninth Circuit concluded that, under Turner's four part test, the requirement that plaintiff submit an application to the CFP before prison officials attempted to provide him with a kosher diet was reasonably related to legitimate penological interest and, thus, did not violate the plaintiff's First Amendment rights. Id. at 770-71.

Standing

Defendants argue that, pursuant to Resnick v. Adams, plaintiff lacks standing to bring a claim challenging his failure to receive a kosher meal because he did not follow the application process to receive a religious diet.

Dismissal of a claim is appropriate under Federal Rule of Civil Procedure Rule 12(b)(1) when the court lacks subject-matter jurisdiction over the claim. Standing is jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1). See United States v. Hays, 515 U.S.

737, 742 (1995); Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). The party asserting the claim has the burden of establishing standing. See Colwell v. Dept. of Health and Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009). When ruling on a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Graham v. FEMA, 149 F.3d 997, 1001 (9th Cir. 1998) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)).

The doctrine of standing encompasses constitutional requirements and prudential considerations. See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982); Sahni v. American Diversified Partners, 83 F.3d 1054, 1057 (9th Cir. 1996). From a constitutional perspective, Article III's case-or-controversy requirement requires the following for each claim: (1) the party invoking federal jurisdiction must have suffered some actual or threatened injury; (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision would likely redress or prevent the injury. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), 528 U.S. 167, 180–81, 185 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

Defendants' argument that plaintiff lacks standing to bring his claims is without merit. First, defendants have misconstrued plaintiff's claims. Plaintiff is not alleging that he should not have been required to follow a process to determine whether he was eligible to receive kosher meals, like the plaintiff in Resnick. Instead, plaintiff alleges that defendant Jones denied his request for a kosher meal in violation of the First Amendment. Plaintiff also alleges that to the extent there were procedures for requesting special diets, he followed them. Plaintiff alleges that the procedures for making and reviewing religious diet requests were inadequate and that defendant Growden did not adequately train his employees to process these requests. Plaintiff clearly has standing to raise these claims.

In any event, were plaintiff raising a claim challenging the requirement that he make a formal application for a religious diet, like the plaintiff in Resnick, a motion to dismiss this claim based on Resnick should be brought pursuant to Federal Rule of Civil Procedure 12(b)(6) rather than (b)(1). In Resnick, the Ninth Circuit did not find that the plaintiff lacked standing to raise

1   his First Amendment claim. Instead, the Ninth Circuit found that the plaintiff had not
2   demonstrated a violation of the First Amendment. Accordingly, defendants' motion to dismiss on
3   grounds that plaintiff lacks standing should be denied.

        <u>Application of Resnick</u>

5   Defendants argue that plaintiff's First Amendment claim should be dismissed because just
6   as in <u>Resnick</u>, plaintiff was required to follow a process to determine whether he was eligible to
7   receive kosher meals. Defendants argue that plaintiff did eventually receive his kosher meal, and
8   that plaintiff himself caused the delay in his receipt of a kosher meal by failing to submit a written
9   request for a religious diet until March 18, 2015. Pursuant to Federal Rule of Civil Procedure
10  12(b)(6), the undersigned herein considers whether plaintiff has stated a potentially colorable
11  First Amendment claim for relief.
12  As discussed above, plaintiff's claims can be distinguished from the claim addressed in
13  <u>Resnick</u>. In <u>Resnick</u>, the Ninth Circuit considered only whether the requirement that the inmate
14  submit an application to receive a kosher meal was a constitutional infringement. 348 F.3d at
15  768. In <u>Resnick</u>, the Ninth Circuit noted that prison officials had not categorically refused to
16  provide the plaintiff with kosher meals. <u>Id.</u> at 767.
17  In the instant case, unlike the inmate in <u>Resnick</u>, plaintiff raises a claim challenging
18  defendants' alleged denial of his request for a kosher meal. In addition, plaintiff is not arguing
19  that he should not have been required to submit an application to receive a kosher meal, like the
20  plaintiff in <u>Resnick</u>. Instead, plaintiff is alleging that to the extent there were procedures for
21  submitting requests for religious diets, he followed them. Plaintiff alleges that these procedures
22  were inadequate and that the officers in charge of implementing them were not adequately
23  trained. For example, plaintiff alleges that the booking officer wrote down on the booking form
24  that plaintiff did not request a special diet, even after plaintiff told him that he wanted a kosher
25  diet. Plaintiff alleges that the booking officer wrongly advised him to submit a request for a
26  kosher diet to the medical department. Plaintiff alleges that when defendant Jones first
27  interviewed him, defendant Jones indicated that he did not know how to evaluate plaintiff's
28  request. Plaintiff argues that the inadequate training and inadequate policies for submitting and

8

reviewing religious diet requests caused the delay in his receipt of a religious diet.

Defendants' argument that plaintiff himself caused the delay in the processing of his request for a religions diet by not making a written request until March 18, 2015, is more appropriately raised in a summary judgment motion. For that reason, the undersigned will not address this argument in these findings and recommendations. However, the undersigned observes that defendants' argument is not supported by the record before the court at this time. Defendants apparently rely on the Inmate Request Form signed by plaintiff on March 18, 2015, in which he requested a kosher diet. (ECF No. 9 at 27.) The jail officer responding to this request wrote,

> I am in receipt of your request form and have also reviewed your grievance (#209) as it related to a Kosher Diet. Since it appears you are grieving a decision from the jail commander I will refer this matter to the Undersheriff for follow up review.

(Id.)

The response to plaintiff's request, quoted above, suggests that plaintiff's March 18, 2015 grievance was in response to defendant Jones' denial of plaintiff's request for a kosher diet. In other words, plaintiff's March 18, 2015 grievance was not the first time plaintiff requested a kosher diet, as suggested by defendants.

To clarify, plaintiff's complaint challenges defendant Jones' alleged denial of his request for a kosher diet. Plaintiff also alleges that the policies for making and reviewing kosher diet requests were inadequate. Plaintiff also argues that defendant Growden failed to adequately train his subordinates regarding the procedures for processing inmate requests for kosher diets. Plaintiff alleges that the inadequate policies and inadequate training delayed his receipt of his kosher diet. Accordingly, defendants' motion to dismiss on grounds that plaintiff has failed to state a potentially colorable claim for relief should be denied.

C. Qualified Immunity

Legal Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567, (2004) (Kennedy, J., dissenting)).

In determining whether an officer is entitled to qualified immunity, the court must decide (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The measuring rod for determining whether an official's conduct violates a plaintiff's constitutional right was set forth by the Supreme Court in Ashcroft v. al-Kidd, 131 S. Ct. 3034, (2011): "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted).

Discussion

Defendants argue that because plaintiff was ultimately provided a kosher diet, the only potential constitutional violation at issue relates to the period of time between his participation in the administrative process and when he began to receive the kosher meals, i.e., from March 18, 2015, to April 17, 2015. Defendants go on to argue that any delay in plaintiff's receipt of kosher

meals was due to his own failure to participate in the administrative process or due to the justified administrative process conducted by Lassen County Jail officials. On these grounds, defendants apparently argue that plaintiff has not demonstrated a violation of his constitutional rights.

As discussed above, plaintiff is raising a claim challenging defendant Jones' alleged denial of his request for a kosher diet. Plaintiff also alleges that the procedures for making and reviewing requests for religious diets were inadequate and that defendant Growden did not properly train his subordinates to handle these requests. Defendants' argument for qualified immunity is not based on these claims.

In any event, because plaintiff alleges that he told defendant Jones that he had a religious meal card from Corcoran, and that Undersheriff Minnow later granted his request for a kosher meal after consulting with CDCR, the undersigned finds that a reasonable jail official would have known that denying plaintiff's request for a kosher meal violated his First Amendment rights.

In addition, the undersigned finds that defendants are not entitled to qualified immunity based on their claim that the delay in plaintiff's receipt of a kosher diet was justified by the administrative process conducted by the Lassen County Jail to assess the sincerity of plaintiff's religious beliefs. In essence, defendants are arguing that reasonable jail officials would not think that taking time to investigate the sincerity of plaintiff's religious beliefs violated his First Amendment rights. The problem with this argument is that plaintiff alleges that defendant Jones denied his request for a kosher diet despite his sincere religious beliefs. In addition, plaintiff has pled sufficient facts in support of his claim that the delay in his receipt of a religious diet was caused by a lack of training and adequate procedures for making and evaluating requests for religious diets. Based on these alleged facts, the undersigned finds that plaintiff has demonstrated a violation of his constitutional rights.

For the reasons discussed above, the undersigned recommends that defendants' motion to dismiss on grounds that they are entitled to qualified immunity be denied.

////

////

D.  Claim for Damages Under RLUIPA

Defendants move to dismiss plaintiff's damages claims against them.  Monetary damages are not available against defendants in their individual capacities.  See Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) (citing Sossamon v. Texas, 563 U.S. 277 (2011).)  Accordingly, defendants' motion to dismiss plaintiff's claim for damages under RLUIPA should be granted.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 17) be granted as to plaintiff's claims for damages under RLUIPA; defendants' motion to dismiss should be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 26, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hoff1558.mtd