1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KASEY F. HOFFMAN,                          No.  2:  15-cv-1558 JAM KJN P

12                   Plaintiff,

13          v.                                   ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14   LASSEN ADULT DETENTION
     FACILITY, et al.,
15
                     Defendants.
16

17

18   I.  Introduction

19          Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

20   to 42 U.S.C. § 1983.  Pending before the court are several motions including plaintiff's motion

21   for summary judgment (ECF No. 73) (construed as an opposition to defendants' motion for

22   extension of time), plaintiff's motion for seizure of assets (ECF No. 68), plaintiff's motion for an

23   extension of time to conduct discovery (ECF No. 69), cross motions for motion for summary

24   judgment (ECF Nos. 65, 81), and plaintiff's motion for punitive damages (ECF No. 84).

25          After carefully considering the record, the undersigned recommends that defendants'

26   motion for summary judgment be granted in part and denied in part, and plaintiff's motion for

27   summary judgment be denied.  The undersigned orders that plaintiff's other pending motions are

28   denied.

                                                 1

II. <u>Plaintiff's Motion for Extension of Time to Conduct Discovery (ECF No. 69)</u>

Under Rule 16 of the Federal Rules of Civil Procedure, the court may modify the scheduling order in this case for "good cause." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." <u>Johnson v. Mammoth Re-creations</u>, 975 F.2d 604, 608 (9th Cir. 1992).

Pursuant to the August 25, 2016 scheduling order, the parties were permitted to conduct discovery until December 16, 2016. (ECF No. 51 at 5.) All requests for discovery pursuant to Federal Rules of Civil Procedure 31, 33, 34 or 36 were to be served not later than sixty days prior to December 16, 2016. (<u>Id.</u>)

Pursuant to the mailbox rule, plaintiff filed his pending motion for extension of time to conduct discovery on December 30, 2016. (ECF No. 69 at 10.) In the pending motion, plaintiff describes the additional discovery he would like to conduct. Plaintiff alleges that he will require subpoenas to obtain documents in defendants' possession including his medical file, his 832.5 form, plaintiff's original complaint and plaintiff's first amended complaint. Plaintiff alleges that he needs to depose defendants by written questions. Plaintiff also alleges that he needs to depose the following witnesses by written question: Hannah Hewitt, A. Wilson, Supervisor Reed, Sergeant Witrow, Supervisor Mack, Nurse McKee, Keith Stewart, Jeff Utter and Jason Langslet. Plaintiff also appears to allege that he needs to issue subpoenas to defendants to produce documents that they refused to produce in response to his request for production of documents.

The undersigned observes that plaintiff has previously filed discovery related requests. On August 25, 2016, and September 12, 2106, plaintiff filed motions requesting that subpoenas be issued to parties and non-parties for various documents. (ECF Nos. 53, 55.) On September 23, 2016, the undersigned denied those requests. (ECF No. 57.) The undersigned denied plaintiff's request for subpoenas addressed to defendants on the grounds that Federal Rule of Civil Procedure 45 does not authorize service of subpoenas on parties. (<u>Id.</u>) The undersigned denied plaintiff's request for issuance of subpoenas on non-parties on the grounds that plaintiff had not demonstrated that the documents and records sought were obtainable only through the non-parties. (<u>Id.</u>) It appeared that many of the documents sought were obtainable from

1    defendants. (Id.)

2         On September 22, 2016, plaintiff filed another request for issuance of subpoenas to non-

3    parties. (ECF No. 56.) On October 13, 2016, the undersigned denied that request. (ECF No. 59.)

4         On October 12, 2106, plaintiff filed a motion to compel. (ECF No. 60.) In that motion,

5    plaintiff claimed that defendants had not provided him with timely responses to interrogatories

6    and a request for production of documents. (Id.) In the opposition, defendants stated that

7    plaintiff had served three discovery requests. (ECF No. 51.) Defendants stated that they served

8    plaintiff with timely responses to all three discovery requests. (Id.) On December 12, 2016, the

9    undersigned denied the motion to compel. (ECF No. 64.)

10        For the following reasons, the undersigned finds that plaintiff has not shown good cause to

11   grant his motion for an extension of time to conduct additional discovery. While plaintiff claims

12   that he did not understand that his discovery requests were due 60 days prior to December 16,

13   2016, until it was explained to him, he does not indicate when he understood the discovery

14   deadline. In any event, plaintiff's alleged failure to understand this deadline does not explain his

15   failure to earlier seek any of the large volume of discovery now requested. Plaintiff's failure to

16   seek any of the requested discovery prior to the discovery deadline demonstrates that he did not

17   act diligently in conducting discovery. Plaintiff had ample opportunity to conduct discovery. For

18   these reasons, plaintiff's motion for an extension of time to conduct discovery is denied.

19   III.  Plaintiff's Motion for Seizure of Assets (ECF No. 68)

20        Citing Federal Rule of Civil Procedure 64, plaintiff requests that defendants' assets be

21   seized to prevent defendants from transferring assets in an attempt to avoid paying money

22   damages to plaintiff should he succeed in this action. On January 25, 2017, defendants filed an

23   opposition to this motion. (ECF No. 74.)

24        In pertinent part, Federal Rule of Civil Procedure 64 provides that,

25        [A]ll remedies providing for seizure of person or property for the
          purpose of securing satisfaction of the judgment ultimately to be
26        entered in the action are available under the circumstances and in
          the manner provided by the law of the state in which the district
27        court is held....

28   Fed.R.Civ.P. 64 (Emphasis added).

3

Thus, Rule 64 "permits state seizure provisions to be used in federal courts ..." <u>Reebok Int'l v. Marnatech Enters.</u>, 970 F.2d 552, 558 (9th Cir. 1992); <u>Pos–A–Traction, Inc. v. Kelly–Springfield Tire Co.</u>, 112 F.Supp.2d 1178, 1181 (C.D.Cal. 2000) (noting that Rule 64 incorporates state law for prejudgment seizures of property).

Under Cal.Code Civ. Pro. § 484.090(a), in order for a plaintiff to obtain issuance of a Right to Attach Order and Writ of Attachment after hearing the plaintiff must demonstrate: (1) that the claim on which the attachment is based must be one on which an attachment may be issued; (2) the probable validity of the claim on which the attachment is based; and (3) that the attachment is not sought for a purpose other than the recovery on the claim on which the attachment is based.

Plaintiff's motion for prejudgment seizure of assets is denied because plaintiff has not shown the probable validity of his claims. As discussed herein, the undersigned recommends that all claims be dismissed except for plaintiff's First Amendment claim against defendant Jones. However, the undersigned does not find that plaintiff has shown the probable validity of his remaining claim against defendant Jones.

IV. <u>Plaintiff's Motion for Punitive Damages (ECF No. 84)</u>

In this motion, plaintiff requests that he be allowed to pursue punitive damages, pursuant to California Civil Code § 3294, for violation of the California Bane Act (California Civil Code § 52.1). Plaintiff also requests that defendants be prosecuted pursuant to California Penal Code § 422.6. On April 11, 2017, defendants filed an opposition to this motion. (ECF No. 89.)

Defendants argue, in part, that plaintiff is attempting to amend his complaint. Defendants argue that plaintiff's motion to amend should be denied as untimely. The undersigned agrees.

Motions to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In the Ninth Circuit, Rule 15(a) is applied with "extreme liberality." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003).

Nevertheless, the court retains discretion to grant or deny a motion for leave to amend. <u>Leadsinger, Inc. v. BMG Music Pub.</u>, 512 F.3d 522, 532 (9th Cir. 2008). The court considers five

4

factors when assessing the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended his complaint. <u>Allen v. City of Beverly Hills</u>, 911 F.2d 367, 373 (9th Cir. 1990). The court "need not apply all five factors" when two factors sufficiently persuade the Court to deny the motion. <u>Id.</u>

Plaintiff filed the pending motion requesting to add additional legal claims well after the deadline for filing dispositive motions had passed. Plaintiff also filed this motion just eleven days after defendants filed their summary judgment motion. Under these circumstances, plaintiff has shown undue delay in bringing the motion to amend. Allowing plaintiff to amend his complaint at this time to raise these new claims would prejudice defendants. In addition, plaintiff has previously been allowed to file amended complaints. On these grounds, plaintiff's motion for punitive damages, construed as a motion to amend, is denied.[1]

V. <u>Plaintiff's Motion for Summary Judgment (ECF No. 73)</u>

In this motion for summary judgment, plaintiff objects to defendants' request for extension of time to oppose plaintiff's motion for summary judgment. (<u>See</u> ECF No. 67.) On January 12, 2017, the undersigned granted defendants' motion for extension of time. (ECF No. 71.) Plaintiff has not demonstrated that he was prejudiced by the court granting defendants' motion for extension of time. Accordingly, plaintiff's motion for summary judgment, construed as an opposition to defendants' motion for extension of time to file an opposition to plaintiff's summary judgment motion, is denied.

VI. <u>Cross Motions for Summary Judgment</u>

In this action, plaintiff alleges that he was denied a Kosher diet while housed at the Lassen County Jail. The defendants are Lassen County Jail Commander Jones and Lassen County Sheriff Growden. The following facts are undisputed.

Plaintiff was booked into the Lassen County Jail on February 17, 2015. (ECF No. 81-5 at 3.) On February 23, 2015, plaintiff submitted an Inmate Request Form to the kitchen for a kosher

---

[1] The undersigned observes that California Penal Code section 422.6 provides no private right of action. Thus, amendment to include a claim pursuant to this section is futile.

diet.  (Id. at 27.)  Sometime between February 23, 2015, and March 23, 2015, defendant Jones

denied plaintiff's request for a kosher diet.  (Id. at 4-5.)  On March 23, 2015, Undersheriff

Mineau granted plaintiff's request for a kosher diet.  (Id. at 5.)

The undersigned clarifies the legal claims plaintiff is raising.  As discussed in the May 27,

2016 findings and recommendations addressing defendants' motion to dismiss, plaintiff alleges

that defendant Jones violated his First Amendment rights by denying his request for a kosher diet.

(ECF No. 33 at 7.)  Plaintiff alleges that defendant Growden failed to train his employees

regarding how to process requests for religious diets.  (Id.)  Plaintiff's claims against defendant

Growden are based on alleged violations of the First Amendment and the Religious Land Use and

Institutionalized Persons Act ("RLUIPA").  Plaintiff seeks money damages only.

A. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in

Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears
> the initial responsibility of informing the district court of the basis
> for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need

only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

burden of production may rely on a showing that a party who does have the trial burden cannot

produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R.

Civ. P. 56(c). The evidence of the opposing party is to be believed. <u>See Anderson</u>, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. <u>See Matsushita</u>, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>See Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on August 16, 2013(ECF No. 22), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. <u>See Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (<i>en banc</i>); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

B. <u>Background</u>

To put the pending summary judgment motions in context, the undersigned provides the following background.

Plaintiff was booked into the Lassen County Jail on February 17, 2015. (ECF No. 81-5 at 3.) On February 23, 2015, plaintiff submitted an Inmate Request Form to Kitchen Manager Keith Stewart requesting a kosher diet and identifying himself as Jewish. (ECF No. 81-5 at 4.) In this request plaintiff wrote, "Being a Jewish inmate I have a right to eat a kosher diet as outlined in Leviticus 11: 1-31. I was approved for Kosher diet by Rabbi Jacob Sharone at CSP-SATF and at CSP-Solano. By state law that approval is transferable to institution. I would like to be provided with a Jewish Kosher diet." (<u>Id.</u> at 27.)

According to defendant Jones, Mr. Stewart "promptly" brought plaintiff's request to his attention. (ECF No. 81-5 a 4.) Defendant Jones had doubts regarding the sincerity of plaintiff's religious beliefs based on plaintiff's past affiliation with white supremacists. (<u>Id.</u>) Defendant Jones contacted staff at several other detention facilities to learn how they tested the sincerity of

an inmate's religious beliefs when that inmate requested a kosher diet. (Id.) Defendant Jones also contacted a rabbi in Reno to learn what a person who converted to Judaism should know if they were truly practicing their faith. (Id.)

Based on his investigation, defendant Jones prepared an Inmate Application for Religious Meal Program form and provided it to plaintiff. (Id.) Plaintiff completed the form on February 24, 2015, i.e., one day after he submitted the request for a religious diet to kitchen manager Stewart. (Id.) A copy of this one page form is attached to defendant Jones's declaration. (Id. at 29.) In this form, plaintiff identified his religious affiliation as Jewish. (Id.) In the section of the form asking plaintiff if he converted to this religion, plaintiff circled "no." (Id.) Plaintiff wrote that he worshipped at a Jewish synagogue. (Id.) Plaintiff identified his Rabbi as Jerome Sharone at CSP-SATF. (Id.) In the section of the form asking plaintiff what about his beliefs required him to be on a religious meal program and to identify what he was asking for, plaintiff wrote, "A Kosher diet in accordance with Leviticus Law 11: 1-31. A discipline by Jewish faith." (Id.)

According to defendants, on February 26, 2015, plaintiff submitted a second Inmate Request Form to defendant Jones seeking a kosher diet. (Id. at 4.) Plaintiff apparently submitted this form after receiving no response to his Application for a Religious Meal submitted two days earlier. A copy of this form is attached to defendant Jones's declaration. (Id. at 31.) On this form plaintiff wrote,

> 3 days ago I turned in a request for a religious diet. Since 2009 I have been on a Kosher diet as approved by CDC and Rabbi Jarold Sharone at CSATF at Corcoran. Upon leaving the institution in 2011 I went to CSP-Solano where I was on a Kosher diet. Per California law, 1st Amendment rights and inmate bill of rights this card is transferable from institution to institution without having to be reapproved by a rabbi...

(Id.)

This form states that plaintiff's request for a kosher diet was denied by the Jail Commander, i.e., defendant Jones. (Id.) The form contains an undated handwritten note stating, "You have failed to provide adequate information regarding your faith, this time." (Id.) The note is signed with the initial "J," which is apparently defendant Jones. (Id.)

////

9

As discussed above, in his declaration, defendant Jones indicates that he interviewed plaintiff regarding his religious faith after receiving plaintiff's application for a religious diet. (Id. at 4-5.) In his declaration, defendant Jones states that he found that plaintiff was unable to identify where exactly he purchased kosher foods and could identify only hot dogs as the kosher food he ate. (Id.) Based on plaintiff's responses to the questions, defendant Jones denied plaintiff's request for a kosher diet. (Id.) Defendant Jones does not state when he asked plaintiff these questions or when he denied plaintiff's request for a religious diet.

According to defendants, on March 9, 2015, plaintiff submitted an Inmate Request Form seeking Jewish religious services from a Rabbi, a Torah, a Yamaka and a prayer shawl brought in for the celebration of Passover. (Id. at 33.) Plaintiff also wrote that the kitchen needed to be made aware of meal practices for the 7 holy days. (Id.) On March 16, 2015, defendant Jones approved this request. (Id.) Defendant Jones wrote on the form, "I have spoken to a Rabbi in Reno that will be sending study materials for the Jewish faith. Clothing is not allowed at this time." (Id.)

On March 18, 2015, plaintiff submitted an Inmate Request Form asking for a kosher diet. (Id. at 35.) In an undated response, defendant Growden wrote,

> I am in receipt of your request form and have also reviewed your grievance (#209) related to a Kosher Diet. Since it appears you are grieving a decision from the jail commander I will refer this matter to the Undersheriff for follow-up review.

(Id.)

Attached to defendant Jones's declaration is a grievance submitted by plaintiff on March 19, 2015, asking for a kosher diet. (Id. at 39.) This is apparently the grievance referred to by defendant Growden in the response quoted above.

On March 23, 2013, Undersheriff Mineau granted plaintiff's request for a kosher diet. (ECF No. 81-4 at 44 (form granting plaintiff's request).) In his declaration, defendant Jones states that Undersheriff Mineau obtained a copy of Plaintiff's Religious Diet Request approved by

////

////

10

a State Chaplain in 2009. (Id. at 5.) This statement constitutes inadmissible hearsay as it is not based on defendant Jones's personal knowledge.[2] See Fed. R. Evid. 801.

The undersigned observes that a copy of the form granting plaintiff's 2009 request for a religious diet is attached to defendant Jones's declaration. (Id. at 42.) This form is signed by Jarold Sharone and states that the request was granted "based on testimony of mother that she is Jewish." (Id.)

C. First Amendment Claim

1. Legal Standard

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of inmates' religions by preventing them from engaging in conduct that he or she sincerely believes is consistent with their faith. However, an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

2. Sincerely Held Belief

Defendants move for summary judgment on the grounds that plaintiff did not hold a sincere religious belief that entitled him to a kosher diet. Plaintiff moves for summary judgment on the grounds that his religious beliefs were sincerely held. For the reasons stated herein, the undersigned finds that neither party is entitled to summary judgment on these grounds.

"Although a jail or prison is permitted to inquire into an inmate's sincerity when considering a religious accommodation, the weight of recent case law suggests that it is inappropriate for a court to grant summary judgment based on a plaintiff's alleged lack of

---

[2] The form granting plaintiff's request for a religious diet on March 23, 2015, does not mention the 2009 form signed by the State Chaplain.

sincerity." Hill v. Skrah, 2017 WL 1364616 at *8 (D. Ore. March 14, 2017) (citing Dean v. Corr. Corp. of Am., 108 F. Supp. 3d 702, 711 (D. Ariz. 2014) (finding that the defendants have raised material questions of fact regarding the plaintiff's sincerely held beliefs.); Colvin v. Caruso, 605 F.3d 282, 298 (6th Cir. 2010) (sincerity of an inmate's beliefs does not turn on an inmate's objective knowledge of his religion); Johnson v. Nev. Bd. of Prison Comm'rs, 2013 WL 5428423, at *2–3 (D. Nev. Sept. 26, 2013) (although the defendants produced evidence that the plaintiff's beliefs were not sincerely held, the question "must ultimately be resolved by the trier of fact."); White v. Linderman, 2013 WL 4496364, at *6 (D. Ariz. 2013) ("'backsliding' or non-observance of a religious practice is not sufficient to establish as a matter of law that [the plaintiff] is insincere in his religious beliefs."); Monts v. Arpaio, 2012 WL 160246, at *3 (D. Ariz. Jan. 19, 2012) (although the plaintiff presented a "weak" case for the sincerity of his religious belief, it still presented a question of fact); Reiss v. Stansel, 2011 WL 2111999, at *5–6 (D. Ariz. May 26, 2011) ("[c]redibility issues such as the sincerity of [a plaintiffs] religious belief are quintessential fact questions. As such they ordinarily should be reserved for the factfinder at trial, not for the court at summary judgment,") (internal quotation marks and citation omitted); Shilling v. Crawford, 2007 WL 2790623, at *16 (D. Nev. 2007) ("Whether a belief is sincerely held is a question of fact, generally not appropriately decided in a motion for summary judgment.").

Defendants first argue that plaintiff's religious beliefs were not sincere based on his upbringing and past affiliations. In support of this argument, defendants first allege that plaintiff was born and raised in Lassen County. (Plaintiff's deposition at p. 8.) Plaintiff was not raised in the Jewish faith. (Id. at p. 25.) Plaintiff's family was "registered Mormon." (Id.) Defendants also state that plaintiff was well known to members of the law enforcement community due to his upbringing, his criminal activities and his affiliation with white supremacists. (ECF No. 81-5 at 2-4.)

Plaintiff does not dispute that he was raised Mormon or that he previously affiliated with white supremacists. At his deposition, plaintiff testified that around 2007 and 2008 he "transitioned away" from white supremacy after studying with Rabbi Jerry Sharone at the

California Substance Abuse Treatment Facility.  (Plaintiff's deposition at p. 24.)

The fact that plaintiff was raised in a Mormon family and previously associated with white supremacists does not necessarily mean that plaintiff's religious beliefs, following his alleged conversion to Judaism in 2007 and 2008, were not sincerely held.  Defendants offer no evidence that plaintiff practiced Mormonism or associated with white supremacists at any time after his alleged conversion.  Accordingly, defendants are not entitled to summary judgment on the grounds that plaintiff's religious beliefs were not sincere on these grounds.

Defendants next argue that plaintiff's religious beliefs were not sincere because he ate non-kosher food after his request for kosher food was granted.  In support of this claim, defendants cite the declaration of defendant Jones which states, in relevant part,

> 29.   After the requested diet was approved, Jail staff observed plaintiff was not adhering to the kosher diet.   He was seen consuming non-kosher food items, including an entire meal tray that was prepared for a different inmate.  Plaintiff  also shared his kosher meal items with others.
>
> 30.  On May 8, 2015, I warned plaintiff in writing that he could lose his religious diet if he was not adherent to the religious diet because his actions indicated that he did not have a sincere religious belief that required the requested accommodation.

(ECF No. 81-5 at 5.)

In his verified opposition, plaintiff disputes defendants' claim that he ate non-kosher food after his request for a kosher diet was approved by Undersheriff Mineau.  (ECF No. 88 at 29.) While plaintiff does not deny that he ate non-Kosher food, he argues that the statements in defendant Jones's declaration regarding his eating non-Kosher foods are false.  (Id.)  Plaintiff states that on May 8, 2015, defendants issued a "frivolous, unmerited, unfactual document" that was only "put forward to threaten plaintiff of further oppression…"   (Id.)

Defendant Jones's statement in paragraph 29 of his declaration that jail staff observed plaintiff eating non-kosher food constitutes hearsay, as it is not based on defendant Jones's own observation.  See Fed. R. Evid. 801.  However, information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial.  Fraser v. Goodale, 342 F.3d 1023, 1036 (9th Cir. 2003).  However, defendants have made

13

no showing that defendant Jones may testify at trial regarding the alleged observations of jail staff.  See Wheeler v. Aliceson, 2016 WL 7240314 at 12-13 (E.D. Cal. 2016) (citing Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) (holding that an affidavit which contained hearsay statements that were not based on personal knowledge and failed to set forth facts that would be admissible in evidence did not met the requirements of Fed. R. Civ. P. 56(e)); Medina v. Multaler, Inc., 547 F. Supp. 2d 1099, 1122 (C.D. Cal. 2007) ("Medina bases much of her declaration on hearsay evidence that will not be admissible at trial.  Medina will not, for example, be able to take the witness stand at trial and recount statements that constitute hearsay, double hearsay, or triple hearsay.").

Accordingly, the undersigned finds that defendants have not demonstrated that plaintiff's religious beliefs were insincere based on his alleged consumption of non-kosher foods after defendants granted his request for a kosher diet.[3]  However, even if defendants could prove that plaintiff ate non-kosher food after Undersheriff Mineau granted his request for a kosher diet, whether this "backsliding" demonstrated that plaintiff's religious beliefs were not sincere is better left for a jury to decide.

Both parties appear to argue the sincerity of sincerity of plaintiff's religious beliefs based on plaintiff's responses to the questions posed to him by defendant Jones regarding Judaism. Defendants argue that plaintiff's inability to answer questions regarding the Jewish religion demonstrates that his religious beliefs were not sincere.  In support of this argument, defendants cite the declaration of defendant Jones who states, in relevant part,

> 21.  Based on prior knowledge of plaintiff, my belief is if he held a sincere religious belief that required a kosher diet at the time of his request in 2015, he must have converted to Judaism, his newly

---

[3]  Attached to plaintiff's opposition is a copy of the May 8, 2015 letter from defendant Jones to plaintiff warning him that if he continued eating non-kosher food, his kosher diet would be discontinued.  (ECF No. 88 at 45.)  Plaintiff handwrote on this letter, "In the above mentioned paragraph, it is incorrect and without merit.  In that I have a cellie who I pass food to." (Id.) Plaintiff has also attached records from the Lassen County Jail beginning March 27, 2015, through October 12, 2015, documenting his receipt of kosher meals.  (Id. at 46-49.)  These records contain notes indicating that from March through early May 2015, plaintiff was seen occasionally eating non-kosher food.  (Id.)  The entries in these records are initialized by jail staff. (Id.)  Plaintiff may have to address these records at trial.

14

identified religion. I contacted staff at several other detention facilities to learn how they tested the sincerity of an inmate's belief when that person requests a kosher diet. I also contacted a rabbi in Reno to learn what a person who converted to Judaism should know if they were truly practicing the Jewish faith.

22. Based on my investigation, I prepared an Inmate Application for Religious Meal Program form and provided it to plaintiff. Plaintiff completed the form on February 24, 2015. A true and correct copy of the completed Inmate Application for Religious Meal Program is attached to this declaration as Exhibit K.

23. On February 26, 2015, plaintiff submitted a second Inmate Request Form seeking a kosher diet. This request was submitted to me. A true and correct copy of plaintiff's second request (stamped "324") is attached to this declaration as Exhibit L.

24. I asked plaintiff several questions about the Jewish faith that would indicate he had sincere religious beliefs that required a kosher diet. Plaintiff was unable to accurately answer the questions I had. Plaintiff was unable to identify where exactly he purchased kosher food. When asked what foods he ate to observe his faith, plaintiff only identified kosher hot dogs. Based on the totality of all the pertinent facts obtained by plaintiff, consultation with other Jail Commanders, consultation with a Rabbi and a review of his knowledge of the Jewish faith, I determined that plaintiff did not hold a sincere religious belief that required granting the requested accommodation.

(ECF No. 81-5 at 4-5.)

At his deposition, plaintiff testified regarding the meeting where defendant Jones asked him questions regarding the Jewish religion. Plaintiff testified that defendant Jones asked him five questions during this meeting. (Plaintiff's deposition at p. 33-34.) Plaintiff testified that when defendant Jones asked the questions, the computer monitor was facing defendant so plaintiff could not see it.[4] (Id. at p. 33.) Plaintiff could not recall the specific questions asked. (Id. at p. 35.) Plaintiff testified that the topics generally concerned "the three patriarchs of Judaism, the five books of the Torah, what dictates kosher practices." (Id.) Plaintiff testified that he answered the question regarding the patriarchs by identifying Abraham, Isaac and Jacob. (Id. at p. 38.) Plaintiff testified that he answered the question about the five books of the Torah by stating that they would be the first five books of Moses, which include Genesis, Exodus,

---

[4] This testimony suggests that the questions were typed on a computer, and may still be available for review.

15

Deuteronomy, Numbers and Leviticus. (Id.) Plaintiff testified that eating kosher means,

> to follow the guidelines in Levitican law, Chapter 11 of what you
> can and cannot eat. You can't eat cows that chew the cud, anything
> that has a split hoof and chews the cud. You can eat anything that
> has scales. You can eat the birds of the air and the fish of the sea,
> but you can't eat like muscles. You can't eat like catfish. You
> can't eat pigs.

(Id.)

Plaintiff testified that he believed he answered the questions defendant Jones asked him about Judaism correctly. (Id. at p. 39.)

Based on plaintiff's deposition testimony, the undersigned finds that whether plaintiff did not correctly answer the questions posed to him by defendant Jones regarding Judaism is a disputed fact. Defendant Jones only discusses plaintiff's alleged failure to adequately answer questions regarding where to buy kosher foods and what kosher foods he ate. At his deposition, plaintiff testified that he was able to accurately answer questions regarding the three patriarchs of Judaism, the five books of the Torah and what dictates kosher practices.[5] Based on this record, the undersigned cannot determine whether plaintiff's religious beliefs were sincerely held. Neither party should be granted summary judgment based on plaintiff's response to defendant Jones's questions regarding Judaism.

Defendants next argue that plaintiff ate non-kosher food two days before his February 2015 arrest. In particular, defendants state that on February 15, 2015, plaintiff was detained at the Café' at Rail City in Sparks, Nevada, after ordering and eating a non-kosher meal for which he could not pay. (ECF No. 81-7 at 1-2.) That meal included beef chili with cheese and a bacon cheeseburger. (Id. at 5; ECF No. 81-4 at 1-2.) The Café at Rail City does not operate a kosher kitchen. (ECF No. 81-4 at 1.) Bacon is not kosher. (Plaintiff's deposition at 83.) It is also not kosher to eat beef and dairy together. (Id.)

////

---

[5]  The undersigned makes no finding regarding whether plaintiff's responses to the questions regarding the patriarchs, Torah and kosher practices were accurate. There is no evidence in the record demonstrating that plaintiff's responses were inaccurate.

16

Plaintiff does not dispute that he ate a non-kosher meal two days before he was arrested. At his deposition, plaintiff testified that he was not keeping kosher at that time because he was not sober. (Plaintiff's deposition at p. 83.) Plaintiff testified that he began keeping kosher again after he sobered up following his incarceration in February 2015. It is undisputed that after booking, plaintiff spent three days sleeping to detox from drug use. (ECF No. 81-2 at 6; plaintiff's deposition at pp. 30-31.)

Plaintiff's consumption of one non- kosher meal two days before he was booked into the Lassen County jail does not demonstrate that his religious beliefs were not sincere. As discussed above, "backsliding" is not sufficient to establish, as a matter of law, that plaintiff's religious beliefs were not sincere. Rather, it is best left for a jury to consider this episode of "backsliding" in evaluating the sincerity of plaintiff's beliefs.

Defendants also argue that plaintiff's religious beliefs are not sincere because when not incarcerated, he does not eat a kosher diet. (ECF No. 81-2 at 7.) In support of this argument, defendants cite the declaration of the Stephen Yarrow, the Manager of the Café at Rail City in Sparks, Nevada, where plaintiff ate the chili and bacon cheese burger. (Id.; ECF No. 81-4.) Defendants also cite plaintiff's deposition testimony at 91-92. (ECF No. 81-2 at 7.) In the section of the deposition cited, plaintiff testified regarding eating the chili and bacon cheese burger. Plaintiff did not testify that he did not eat a kosher diet when not incarcerated. Instead, this testimony appears limited to the meal plaintiff ate at the Café at Rail City.

Defendants also argue that plaintiff's religious beliefs are not sincere because when not incarcerated, plaintiff does not adhere to the religious faith. Citing plaintiff's deposition, defendants argue that plaintiff has never attended a synagogue outside the prison system. (ECF No. 81-2 at 7.) In the pages of plaintiff's deposition cited by defendants, plaintiff testified that while he lived in Susanville, he could not seek religious instruction because there was no synagogue or Rabbi in Susanville. (Plaintiff's deposition at p. 64.) Plaintiff testified that the closest synagogue to Susanville was in Reno, but he could not go there because he was not allowed to go out of the state while on parole. (Id.) Plaintiff testified that he could have sought permission to go to Reno for religious instruction, but did not do so because he was dealing with

17

his son. (Id. at p. 64-65.)

The undersigned cannot find that plaintiff's failure to drive to Reno to attend a synagogue demonstrates the insincerity of his religious beliefs as a matter of law. Rather, this circumstance is best considered by a jury in weighing plaintiff's credibility regarding the sincerity of his beliefs.[6]

Defendants argue that even when incarcerated, plaintiff does not always observe Jewish holidays and sometimes forgets to observe them. (ECF No. 81-2 at 7.) Defendants allege that plaintiff testified at his deposition that he did not celebrate Hanukkah while incarcerated at California State Prison-Solano, well before the period of time at issue in this case. (Id.)

At his deposition, plaintiff was asked if he celebrated Jewish holidays. (Plaintiff's deposition at p. 66.) Plaintiff responded that he celebrated Rosh Hashanah, Passover and Hanukkah. (Id.) Plaintiff went on to testify regarding how he celebrated these holidays while incarcerated. (Id. at 66-67.) Plaintiff testified that the last time he celebrated Hanukkah was when he was housed at California State Prison-Solano. (Id. at p. 67.) Plaintiff testified that he did not celebrate Yom Kippur that year because he was involved in litigation concerning his son. (Id.) He testified that he did not celebrate Purim because it "slipped my mind." (Id.)

The undersigned cannot find that plaintiff's somewhat inconsistent celebration of Jewish holidays demonstrates that his religious beliefs were not sincere. Again, plaintiff's celebration of religious holidays is a factor for a jury to consider in evaluating the sincerity of plaintiff's religious beliefs.

Finally, defendants argue that in the form addressed to prison officials in 2009 requesting a kosher diet, plaintiff wrote that he had been practicing Judaism since birth. (See ECF No. 81-5 at 42.) Defendants argue that this statement is not true, and demonstrates an intent to deceive the administrators of correctional facilities. The undersigned cannot find that plaintiff's false representation regarding when he became Jewish demonstrates that his religious beliefs are not

_____

[6] As observed by defendants in the reply, plaintiff may also have to explain to the jury his failure to drive to Reno, Nevada, for a religious service, in contrast to his ability to consume a non-kosher meal in nearby Sparks, Nevada, just days before his arrest.

sincere.  This circumstance should be considered by a jury in evaluating the sincerity of plaintiff's religious beliefs.

For the reasons discussed above, the undersigned recommends that neither plaintiff nor defendants be granted summary judgment with respect to their arguments regarding the sincerity of plaintiff's religious beliefs.  The undersigned acknowledges that there are some cases where it may be appropriate, at summary judgment, to find that a prisoner's religious beliefs are not sincere.  However, based on the evidence discussed above, the issue of the sincerity of plaintiff's religious beliefs is an issue best left to a jury.  While some evidence suggests that plaintiff's beliefs may not be sincere (for example, his consumption of non-kosher food), other evidence points to the sincerity of his religious beliefs (for example, plaintiff's deposition testimony regarding what he allegedly told defendant Jones regarding his knowledge of Judaism, as well as the 2009 form signed by Rabbi Sharrone authorizing a kosher meal).  This is not a case where the evidence overwhelmingly establishes that plaintiff's religious beliefs are not sincere.

The undersigned has also considered whether defendants are only challenging the sincerity of plaintiff's beliefs regarding eating a kosher diet, and not his general religious beliefs. However, based on the evidence discussed above, the undersigned finds that the evidence is not overwhelming that plaintiff's beliefs regarding eating a kosher diet are not sincere.  Instead, the sincerity of plaintiff's religious beliefs regarding eating a kosher diet is an issue that should be left to a jury.

The undersigned also acknowledges that some courts have found that very brief denials of religious diets caused by wrongdoing by prison officials do not rise to constitutional violations. See McKenzie v. Ellis, 2012 WL 4050297 at *5 (S.D. Cal. 2012) (a four day denial of a religious diet, attributable to alleged wrongdoing by prison officials, did not substantially burden the inmate's religious practice); Bell v. Wolfish, 441 U.S. 539, n. 21 (1979) (de minimis level of imposition does not rise to a constitutional violation).  However, the record contains no evidence regarding the date defendant Jones denied plaintiff's request for a kosher diet.  For that reason, the undersigned cannot determine how many days plaintiff went without a kosher diet after defendant Jones denied the request.  However, it appears that this period of time was longer than

19

1 four days.

2 The undersigned also acknowledges that delays in receipt of religious diets caused by

3 ordinary administrative processing do not violate constitutional rights. See Tapp v. Stanley, 2008

4 WL 4934592 at *7 (W.D. N.Y. 2008) (holding that a three month delay in providing a prisoner

5 with a religious meal did not substantially burden the prisoner's sincerely held beliefs where the

6 delay was "caused by ordinary administrative delay"). In the instant case, the delay was not

7 caused by ordinary administrative delay. Rather, the delay was caused by defendant Jones'

8 allegedly improper finding that plaintiff's religious beliefs were not sincerely held.

9 The undersigned does not address whether the alleged "impingement" on plaintiff's rights

10 was "reasonably related to legitimate penological interests,'" Shakur v. Schriro, 514 F.3d 878,

11 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)), as neither party

12 addresses this issue.

13     3. Defendants Entitled to Investigate Claims

14 Defendants argue that even if plaintiff was entitled to the requested diet, they are entitled

15 to summary judgment because plaintiff's request for a kosher diet was promptly investigated and

16 ultimately approved within a reasonable amount of time. Defendants cite Resnick v. Adams, 348

17 F.3d 763, 768-71 (9th Cir. 2003), where the Ninth Circuit held that requiring an application to

18 provide a religious diet does not unduly burden a prisoner's right to practice his religion.

19 Plaintiff does not appear to raise a claim challenging the amount of time it took for

20 defendant Jones to evaluate this claim. Instead, plaintiff is claiming that defendant Jones wrongly

21 denied his request for a kosher diet. Plaintiff argues that defendant Jones wrongly found that his

22 religious beliefs were not sincerely held. Because plaintiff does not raise a claim challenging the

23 amount of time it took defendant Jones to consider his request for a kosher diet, the undersigned

24 will not address this issue further.

25     4. Intentional Discrimination

26 Defendants move for summary judgment on grounds that they did not intentionally burden

27 plaintiff's free exercise of religion. Plaintiff's summary judgment motion addresses the issues

28 raised by defendants in this section of their motion.

1      a. <u>Defendant Growden</u>

2          Defendants argue that defendant Growden's only involvement in the alleged deprivation

3    was to delegate review of plaintiff's March 18, 2015 paperwork, including plaintiff's grievance,

4    to the Undersheriff.  Defendants argue that these actions did not violate plaintiff's right to

5    practice his religion.

6          The undersigned begins this discussion by clarifying the First Amendment theories on

7    which plaintiff is proceeding against defendant Growden.  In the second amended complaint,

8    plaintiff has sued defendant Growden for violating his First Amendment rights in both his

9    individual and official capacities.  (<u>See</u> ECF No. 9 at 9-12.)  Plaintiff seeks money damages only.

10   (<u>Id.</u> at 3.)

11         *First Amendment Official Capacity Claim*

12         While individual-capacity actions seek to impose personal liability upon a government

13   official for actions performed under color of state law, official-capacity actions generally

14   represent another way of suing "an entity of which an officer is an agent." <u>Kentucky v. Graham</u>,

15   473 U.S. 159, 165 (1984) (quoting <u>Monell v. Department of Social Services of City of New York</u>,

16   436 U.S. 658, 690 n. 55 (1978)).  In the instant case, this entity would be Lassen County.  To

17   succeed with an official-capacity claim against defendant Growden, plaintiff must prove that any

18   constitutional violations that he suffered occurred as a result of an official policy or custom,

19   <u>Monell</u>, 436 U.S. at 690, or through a failure to train municipal employees adequately, <u>City of</u>

20   <u>Canton v. Harris</u>, 489 U.S. 378, 388–91 (1989).

21         Plaintiff's official capacity claim against defendant Growden, alleged in the second

22   amended complaint, is based on a failure to train theory.[7]  The undersigned first addresses this

23   claim.

24         A local government entity's practice of inadequate training constitutes a policy giving rise

25   to Section 1983 liability when the entity's failure to train reflects "deliberate indifference"—i.e., a

26   _____

27   [7]  Defendants address plaintiff's failure to train claim against defendant Growden in the section
     of their summary judgment motion addressing plaintiff's RLUIPA claims.  However, plaintiff is
     also alleging that defendant Growden's failure to train his employees violated his First
28   Amendment rights.

conscious or deliberate disregard—to the constitutional rights of its inhabitants.  City of Canton v. Harris, 489 U.S. 378, 392 (1989); Flores v. County of Los Angeles, 758 F.3d 1154, 1158 (9th Cir. 2014).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train ... Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  Connick v. Thompson, 563 U.S. 51, 62 (2011).

Although the Supreme Court has recognized the possibility that a municipality could be liable under Section 1983 for failure to train "without proof of a pre-existing pattern of violations," only if the unconstitutional consequences of failing to train are so "patently obvious" would it be possible for a court to find single-incident liability.  See id. at 64.

The Supreme Court hypothesized an example where a municipality "arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force."  Canton , 489 U.S. at 378.  Through this example, the Court "sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under Section 1983 without proof of a preexisting pattern of violations."  Connick, 563 U.S. at 64.

Plaintiff has alleged two instances of alleged inadequate training which led to the delay in his receipt of a kosher diet.  Plaintiff alleges that when he was booked into the jail, the booking officer wrongly told him to ask the medical department for a special diet.  (ECF No. 9 at 3.)  Plaintiff alleges that after he submitted his request for a kosher diet to the medical department, he was advised that his request should be submitted to the kitchen.  (Id.)  Plaintiff also alleges that defendant Jones was not properly trained regarding how to process requests for kosher diets.

Assuming plaintiff could demonstrate that the booking officer wrongly advised him to submit his request to the kitchen and that defendant Jones did not properly process plaintiff's request for a kosher diet, the undersigned does not find that these circumstances demonstrate deliberate indifference by Lassen County.  Plaintiff cites no other cases involving other inmates at

22

the Lassen County Jail whose requests for religious diets were similarly handled. In addition, plaintiff's request for a kosher diet was granted by Undersheriff Mineau. Based on these circumstances, the undersigned cannot find deliberate indifference with respect to the training of Lassen County jail employees regarding how to process requests for kosher diets.

The undersigned also finds that this case does not constitute a case of single-incident failure to train liability. Because plaintiff received his kosher diet after Undersheriff Mineau reviewed his grievance and request, the undersigned finds that the facts of this case do not demonstrate that the unconstitutional consequences of failing to train were patently obvious.

Accordingly, the undersigned recommends that defendant Growden be granted summary judgment with respect to plaintiff's First Amendment claim for damages against him in his official capacity.

*First Amendment Individual Capacity Claim*

The undersigned agrees with defendants that defendant Growden is not liable for plaintiff's failure to timely receive a kosher diet simply based on his referral of plaintiff's grievance to the Undersheriff. See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted) (to be held liable, a supervising officer has to personally take some action against the plaintiff or "set in motion a series of acts by others ... which he knew or reasonably should have known, would cause others to inflict the constitutional injury" on the plaintiff); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior). Accordingly, defendant Growden should be granted summary judgment to the extent plaintiff bases defendant Growden's liability on his referral of plaintiff's grievance to the Undersheriff.

As discussed above, plaintiff has also stated a claim against defendant Growden, in his individual capacity, for failing to train his employees regarding how to process requests for kosher diets.

Essentially the same standards that apply to Section 1983 official capacity claims apply to Section 1983 individual capacity claims against a supervisor for his failure to train, supervise, or

23

discipline his subordinates.  See Flores, 758 F.3d at 1158-59.  Therefore, in order to allege a plausible Section 1983 individual capacity claim against a supervisor for a failure to train, supervise, or discipline, a complaint must:  (1) identify what kind of training, supervision, or discipline was lacking or how the existing training, supervision, or discipline was defective; (2) that the supervisor was deliberately indifferent to the need for a particular kind of training, supervision, or discipline; and (3) that the lack of the particular training, supervision, or discipline actually caused the plaintiff's harm.  Cf. id.

Plaintiff's claim against defendant Growden in his individual capacity for failing to train his employees regarding how to process requests kosher diets fails for the same reasons as the claim against defendant Growden in his official capacity.  Plaintiff cites no other cases involving other inmates at the Lassen County Jail whose requests for religious diets were similarly handled. In addition, plaintiff's request for a kosher diet was granted by Undersheriff Mineau.  Based on these circumstances, the undersigned cannot find that defendant Growden acted with deliberate indifference with respect to the training of his employees regarding how to process inmate requests for kosher diets.  Accordingly, defendant Growden should be granted summary judgment with respect to this claim.

b. Defendant Jones

Defendants argue that defendant Jones should be granted summary judgment because there is no evidence that he intentionally burdened plaintiff's free exercise of religion. Defendants argue that defendant Jones acted in good faith and investigated plaintiff's request for a kosher meal in a timely matter.  Defendants observe that defendant Jones also approved plaintiff's request for religious reading materials, suggesting that defendant did not intend to violate plaintiff's First Amendment rights.

In the First Amendment context, negligence on the part of a government official is not enough to show a violation of constitutional rights sufficient to state a claim for relief under Section 1983.  See Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009) (dismissing Section 1983 claim because "an isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion"); Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir.

24

2006) ("[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause."); <u>Lewis v. Mitchell</u>, 416 F.Supp.2d 935, 944 (S.D. Cal. 2005) (holding more than negligence is required to state a valid Section 1983 claim for violation of prisoner's First Amendment right to freely exercise religion); <u>Shaheed v. Winston</u>, 885 F.Supp. 861 (E.D. Va. 1995) (finding "defendants [sic] actions were negligent, not intentional, and the plaintiffs may not rely on Section 1983 as a basis for this claim"), <u>aff'd on other grounds</u>, 161 F.3d 3 (4th Cir. 1998) (unpublished).

According to his declaration, defendant Jones initially doubted the sincerity of plaintiff's religious beliefs based on his knowledge of plaintiff's past association with white supremacists. Defendant Jones denied plaintiff's request for a kosher diet because plaintiff did not, in defendant's view, adequately answer questions regarding what kosher food he ate and where he purchased kosher food.

Plaintiff's written request for a kosher diet, reviewed by defendant Jones, stated that in 2009 Rabbi Sharone had authorized plaintiff to receive a kosher diet. Defendant Jones does not address how or if he considered this information. In addition, defendant Jones does not address plaintiff's answers to questions regarding his knowledge of Judaism, other than those concerning kosher diets. As discussed above, at his deposition plaintiff testified that he correctly answered questions regarding his general knowledge of Judaism as well as kosher diets. Finally, the undersigned observes that if defendant Jones found that plaintiff's religious beliefs were not sincere, it is not clear why he granted plaintiff's request for religious materials on March 16, 2015. Defendant Jones does not address this issue in his declaration.[8] In addition, the record contains no evidence that defendant Jones knew that plaintiff had eaten a non-kosher meal at the Café at Rail City when he denied plaintiff's request for a kosher diet.

////

---

[8] Defendants argue that defendant Jones's approval of plaintiff's request for religious reading materials suggests that he did not intend to violate plaintiff's First Amendment rights when he denied his request for a kosher diet. However, other reasonable inferences can be made from defendant Jones's decision to grant plaintiff's request for reading materials which are not in defendant's favor. For example, granting a request for a kosher diet is a heavier burden on the jail than is granting a request for reading materials.

Based on the disputed, and somewhat unexplained, facts discussed above, the undersigned cannot find that defendant Jones did not intentionally discriminate against plaintiff when he denied his request for a kosher diet. Accordingly, defendants' motion for summary judgment on these grounds should be denied.

5. RLUIPA

As discussed above, plaintiff does not seek injunctive relief. The court previously dismissed plaintiff's RLUIPA claims for damages against defendants in their individual capacities. (See ECF No. 33 at 12; ECF No. 48.)

Defendants argue that any remaining RLUIPA claim for damages against defendant Growden in his official capacity should be dismissed because plaintiff has not demonstrated that any failure to train caused plaintiff to be deprived of the right to exercise his religion.

The undersigned takes the view that, as with Section 1983 claims, a county or municipality cannot be held liable for a RLUIPA violation merely because it employs a tortfeasor. See Perfetto v. Plumpton, 2016 WL 3647852 at * 5 (D. N.H. 2016) (discussing cases that permit vicarious liability under RLUIPA, and those that do not). The standard for stating a potentially colorable official capacity RLUIPA claim against defendant Growden is the same for stating a potentially colorable official capacity Section 1983 claim against defendant Growden. See Mahone v. Pierce County, 2011 WL 3298898 (W.D. Wash. 2011). Plaintiff's official capacity RLUIPA claim against defendant Growden is based on the same theory of plaintiff's Section 1983 official capacity claim against defendant Growden, i.e., failure to train.

Plaintiff has provided no evidence that defendant Growden, aka Lassen County, had a policy of failing to train its employees regarding how to process requests for kosher diets. As discussed above, plaintiff cites no other cases involving other inmates at the Lassen County Jail whose requests for religious diets were similarly handled. In addition, plaintiff's request for a kosher diet was granted by Undersheriff Mineau. Plaintiff's own, isolated, experience cannot support a failure to train claim. See Connick v. Thompson, 563 U.S. at 1360. Accordingly, defendant Growden should be granted summary judgment as to plaintiff's RLUIPA claim for damages brought against him in his official capacity.

1    6. Qualified Immunity

2    *Legal Standard*

3    Government officials enjoy qualified immunity from civil damages unless their conduct

4    violates clearly established statutory or constitutional rights. See Jeffers v. Gomez, 267 F.3d 895,

5    910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When determining

6    whether qualified immunity applies, the central questions for the court are: (i) whether the facts

7    alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants' conduct

8    violated a statutory or constitutional right; and (ii) whether the right at issue was "clearly

9    established." Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Pearson v. Callahan, 555 U.S.

10   223, 236 (2009) (holding that this two-part analysis is "often beneficial" but not mandatory).

11   "A government official's conduct violate[s] clearly established law when, at the time of

12   the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

13   official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd,

14   563 U.S. 731, 741 ((2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In this

15   regard, "existing precedent must have placed the statutory or constitutional question beyond

16   debate." Id.; see also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533

17   U.S. at 202). The inquiry must be undertaken in light of the specific context of the particular

18   case. Saucier, 533 U.S. at 201.

19   *Analysis*

20   Because defendant Growden should be granted summary judgment as to all claims against

21   him, the undersigned considers only whether defendant Jones is entitled to qualified immunity as

22   to plaintiff's First Amendment claim.

23   Defendant Jones argues that he is entitled to qualified immunity because the law is

24   unsettled as to how long officials at a Type-II local detention facility may take to investigate the

25   sincerity of inmate's request for a religious diet. Defendants argue that the Lassen County Jail is

26   a Type-II Local Detention Facility, as defined by the California Board of State and Community

27   Corrections. (See ECF No. 81-2 at 4.) Defendants argue that the Code of Regulations is silent on

28   how local detention facilities, which are regulated differently than state prisons, should review

religious diet requests.   Defendants cite section 3054.4 of the California Code of Regulations which states, in relevant part,

> Any inmate who claims to have a religious diet shall be responsible for completing a CDCR Form 3030, Religious Diet Program Request, and submitting it to any Chaplain.   No more than 30 calendar days shall pass from the day the Chaplain receives the completed CDCR Form 3030 Religious Diet Program Request, which results in a determination of program eligibility, to the day an accepted inmate begins receiving the religious meals requested.

Defendants argue,

> Because these specific religious diet program rules do not apply to local detention facilities, officials at those facilities are left without guidance on how long they may investigate a religious diet request. It is reasonable to apply a different standard to small, local facilities that do not house the large number of long-term inmates typically detained in state prison.

(ECF No. 81-1 at 19.)

As discussed above, plaintiff is not challenging the length of time it took defendant Jones to consider his request for a kosher diet.  Instead, plaintiff is claiming that defendant Jones wrongly denied his request for a kosher diet on grounds that plaintiff's religious beliefs were not sincere.   Because defendants' qualified immunity argument does not address the claim raised by plaintiff, the undersigned will not further address this issue.

7.  Punitive Damages

Defendants argue that they are entitled to summary judgment with respect to plaintiff's claim for punitive damages.  The undersigned addresses this argument only as to plaintiff's First Amendment claim against defendant Jones.

Punitive damages may be awarded in Section 1983 cases when a defendant's deprivations of the plaintiff's civil rights were done with either malicious or evil intent, or when the deprivation was done with reckless disregard of the plaintiff's civil rights.  Smith v. Wade, 461 U.S. 30, 46-47 (1983).   Defendants argue that there is no evidence that defendant Jones acted with the requisite intent for punitive damages.

////

28

Based on the disputed facts regarding whether defendant Jones correctly found that plaintiff's religious beliefs were not sincere, the undersigned cannot say that no jury could find that defendant Jones acted with disregard to plaintiff's civil rights. Defendants' motion for summary judgment as to plaintiff's request for punitive damages should be denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for seizure of assets (ECF No. 68) is denied;

2. Plaintiff's motion for an extension of time to conduct discovery (ECF No. 69) is denied;

3. Plaintiff's motion for summary judgment (ECF No. 73) construed as an opposition to defendants' motion for an extension of time, is denied;

4. Plaintiff's motion for punitive damages (ECF No. 84), construed as motion for leave to amend, is denied; and

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 65) be denied;

2. Defendants' motion for summary judgment (ECF No. 81) be denied as to plaintiff's First Amendment claim against defendants Jones and granted in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 12, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hoff1558.sj(3)

29